# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| TAWAYNE HOLLOWAY, § § *Plaintiff,* § § v. § § CITY OF FORT WORTH, § § *Defendant.* § § § | Civil Action No. 4:23-CV-487 Judge Mazzant |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant City of Fort Worth's Motion to Transfer Venue (Dkt. #14). Having considered the motion, the response, and the relevant pleadings, the Court finds that Defendant City of Fort Worth's Motion to Transfer Venue should be **GRANTED**.

### BACKGROUND

This case centers around the alleged violation of Plaintiff Tawayne Holloway's ("Holloway") constitutional rights by the City of Fort Worth ("Fort Worth") and Mitchell J. Miller ("Miller") (Dkt. #1 ¶¶ 81–86).

### I.    Factual Background

On January 28, 2022, an incident occurred outside of the Tarrant County Corrections Center in Fort Worth, Texas, within the Northern District of Texas (Dkt. #1 ¶¶ 8–14). Early that morning, Miller had arrested Holloway for public intoxication (Dkt. #1 ¶ 8). Later, Miller and another police officer escorted Holloway from the back of Miller's patrol vehicle through the sally port of the Tarrant County Corrections Center (Dkt. #11 ¶ 9). After Holloway appeared to say

something, Holloway claims that Miller "brutally assaulted[ed]" him in an "abusive use of force" (Dkt. #1 ¶¶ 10, 12). At this time, Holloway was handcuffed, with his hands behind his back, wearing socks but no shoes (Dkt. #1 ¶ 8; Dkt. 9 ¶ 8; Dkt. 11 ¶ 8).

All the parties in this case reside in Texas. Holloway is a resident of Tarrant County, in the Northern District of Texas (Dkt. #1, Exhibit 1). Fort Worth is a home-rule municipality located in Texas (Dkt. #11 ¶ 2). Miller previously was employed as a police officer with Fort Worth (Dkt. #11 ¶ 3). Miller resides in Denton County, within the Eastern District of Texas (Dkt. #1 ¶ 5; Dkt. #9 ¶ 5).

Fort Worth claims that relevant evidence to this case, specifically all records relating to Fort Worth Police Department policies and training are located within Fort Worth in the Northern District of Texas (Dkt. #14, Exhibit 2 at p. 2). Holloway does not dispute this claim but notes that all such evidence can be provided or transported easily via electronic means (Dkt. #16, Exhibit 1 at pp. 2–3).

Additionally, Fort Worth has identified numerous witnesses who may provide relevant testimony in the case. Although Fort Worth identified Miller as a potential witness, no party specified what information he would discuss in his testimony (Dkt. #14 at pp. 4–5). However, Fort Worth has identified over 30 potential witnesses who may testify in the case (Dkt. #17, Exhibit 1 at pp. 1–3). Thirty of these persons are Fort Worth police officers (Dkt. #17, Exhibit 1 at pp. 1–3. Based on Fort Worth police officer Justin Seaborne's review of personnel records, 17 of the police officers live more than 100 miles from the Sherman courthouse (Dkt. #17, Exhibit 1 at p. 3). All 30 police officers live within the Northern District of Texas (Dkt. #17, Exhibit 1 at p. 3). According to Officer Seaborne, each of the witnesses identified "were involved in the investigation [of

Holloway's assault] either as witnesses, chain of command review, Use of Force Review board[,] or internal affairs investigators" (Dkt. #17, Exhibit 1 at pp. 1–2). He further claims that "[e]ach of these officers and persons has relevant and material information concerning the police department's policies, procedures and training, as well as the investigation of this incident" (Dkt. #17, Exhibit 1 at p. 2).

## II.  Procedural History

On May 26, 2023, Holloway initiated this case against Fort Worth and Miller for alleged violations of 42 U.S.C. § 1983 (Dkt. #1 ¶¶ 81–86). Then, on June 27, 2023, Fort Worth timely moved to transfer this case to the Fort Worth Division of the Northern District of Texas under 28 U.S.C. § 1404(a) (Dkt. #14). Miller is in agreement with Fort Worth's motion to transfer (Dkt. #17 at p. 8). Holloway timely filed his response (Dkt. #16). Fort Worth timely filed its reply (Dkt. #17). Holloway timely filed his surreply (Dkt. #18).

## LEGAL STANDARD

Section 1404(a) permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of § 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" *Van Dusen,* 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960)).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held the determination of convenience turns on eight factors, where "[n]o factor is of dispositive weight." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023).

The four private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

The four public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are neither exhaustive nor exclusive. *Id.*

The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.*; *TikTok*, 85 F.4th at 358. The plaintiff's choice of venue is generally not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise

4

of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315. And while the multi-factor analysis is informative, ultimately, "the district court has broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)). "[A] district court abuses its discretion by denying transfer when 'not a single relevant factor favors the [plaintiff's] chosen venue.'" *TikTok*, 85 F.4th at 358 (quoting *Volkswagen II*, 545 F.3d at 318). A district court also "abuses its discretion by denying a motion to transfer when 'virtually all of the events and witnesses regarding the case . . . are in the transferee forum.'" *Id.* at 366 (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013)).

## ANALYSIS

Fort Worth argues that this case should be transferred to the Northern District of Texas under § 1404(a). No party disputes that this case could have been filed originally in the Northern District of Texas. The Court therefore moves on to the second part of the transfer inquiry: if transfer is appropriate under the private and public interest factors. The Court finds that the factors tip towards transferring the case to the Northern District of Texas.

I.  **Public Interest Factors**

The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen II*, 545 F.3d at 315. The Court will consider each factor in turn.

5

### A.     The Administrative Difficulties Flowing from Court Congestion

The first public interest factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963). For this factor, the Court will apply data from June 30, 2023, the closest point available to when the present motion became ripe. *Federal Court Management Statistics*, UNITED STATES COURTS, https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics /2023/06/30-1.[1] The median number of months from filing to disposition for civil trials is 8.5 months in the Eastern District of Texas and 8.0 months in the Northern District of Texas. *Id.* The median number of months from filing to trial for civil trials is 16.7 months in the Eastern District of Texas and 26.7 months in the Northern District of Texas. *Id.*

Although, this factor "appears to be the most speculative," these statistics indicate the case would be resolved at a faster, or at least similar, pace in the Eastern District of Texas than in the Northern District of Texas. *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (affirming lower court assessment that it could dispose of a case more quickly than the transferee venue where the time to disposition was shorter in the transferee venue, but the time to trial was shorter in the transferor venue). Further, "this factor alone should not outweigh several other factors tending one way or another." *ColorQuick, L.L.C. v. Vistaprint Ltd.*, No. 6:09-cv-323, 2010 WL 5136050, at *6 (E.D. Tex. July 22, 2010) (citing *In re Genentech, Inc.*, 566 F.3d at 1347). This factor weighs against transfer but only slightly.

---

[1] In *In re TikTok*, the Fifth Circuit held that a court cannot consider post-motion case progress when the court inexcusably delays in ruling on a § 1404(a) motion. 85 F.4th at 364. Based on this reasoning, the Court will consider Federal Court Management Statistics from approximately when the present motion became ripe. *See id.*

### B. The Local Interest in Having Localized Interests Decided at Home

The second public interest factor is the local interest in having localized interests decided at home. *Volkswagen II*, 545 F.3d at 315. "Important considerations include the location of the injury, witnesses, and the [p]laintiff's residence." *Def. Distributed v. Bruck*, 30 F.4th 413, 435 (5th Cir. 2022) (citations omitted). This factor recognizes that "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

The Court should "look not to 'the parties' significant connections to each forum . . . but rather the significant connections between a particular venue and the events that gave rise to a suit.'" *TikTok*, 85 F.4th at 364 (quoting *Def. Distributed*, 30 F.4th at 435). "[T]he place of the alleged wrong is one of the most important factors in venue determinations." *Id.* (quoting *Def. Distributed*, 30 F.4th at 435). "[T]his factors weighs heavily in favor of transfer [when] . . . there is no relevant factual connection to the [transferor district]." *Id.* (quoting *Volkswagen II*, 545 F.3d at 317–18). "Also, this factor can weigh against transfer when the 'citizens of [the transferor district] have a greater stake in the litigation than the citizens of [the transferee district].'" *Id.* (quoting *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 632 (5th Cir. 2022)).

Miller resides in the Sherman Division of the Eastern District of Texas (Dkt. #11 ¶ 3) and therefore the Sherman Division has some local interest. Meanwhile, several other facts support transfer on this factor. The events giving rise to this case occurred in the Northern District of Texas, specifically just outside of the Tarrant County Corrections Center in Fort Worth (Dkt. #1 ¶¶ 8–14). "[T]he place of the alleged wrong is one of the most important factors in venue determinations." *TikTok*, 85 F.4th at 364. Therefore, the Fort Worth Division of the Northern

7

District of Texas has a strong local interest in deciding this case. The fact that Holloway resides in Tarrant County further strengthens the Northern District of Texas's local interest (Dkt. #1, Exhibit 1).

Holloway relies on *Bride Ministries, NFP v. DeMaster* for the propositions that the Eastern District of Texas has a local interest in this case because Miller could seek future employment in the district and that the Sherman Division and the Fort Worth Division are in the same metropolitan area (Dkt. 16 at pp. 10–11). No. 4:20-CV-402, 2020 WL 6822836 (E.D. Tex. Nov. 20, 2020). However, *Bride Ministries, NFP* does not support either proposition. *See id.* The case does not suggest that the potential occurrence of a future event can support a local interest. *See id.* According to *Bride Ministries, NFP*, "the State of Texas has an interest in ensuring its residents and businesses are protected from harm." *Id.* at *11. This statement does not suggest that an overlap in metropolitan areas allows a judicial district or division to reach beyond its geographic borders to obtain a local interest. *See id.* Taking Holloway's arguments to their logical extensions would support finding a local interest in any judicial district in any circumstance. The Court rejects these lines of reasoning because they would render the local interest factor meaningless.

Although both the Northern District of Texas and the Eastern District of Texas have a local interest in this case, the Northern District of Texas's local interest is significantly stronger. Therefore, the Court finds that this factor favors transfer.

C. **Familiarity of the Forum with Governing Law**

This factor "considers the current district's 'familiarity with the law that will govern the case.'" *TikTok*, 85 F.4th at 365 (quoting *Volkswagen II*, 545 F.3d at 315). Both parties agree that this factor is neutral (Dkt. #14 at p. 7 n.2; Dkt. #16 at p. 12). The Court finds this factor is neutral.

8

### D. Avoidance of Conflict of Laws

The final public interest factor "seeks to avoid 'unnecessary problems of conflict of laws or in the application of foreign law.'" *Def. Distributed*, 30 F.4th at 436 (quoting *Volkswagen II*, 545 F.3d at 315). Both parties agree that this factor is neutral (Dkt. #14 at p. 7 n.2; Dkt. #16 at p. 12). The Court finds this factor is neutral.

## II. Private Interest Factors

Next, the Court considers the private interest factors. The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen II*, 545 F.3d at 315.

### A. The Relative Ease of Access to Sources of Proof

This factor "focuses on the location of 'documents and physical evidence relating to the [case].'" *TikTok*, 85 F.4th at 358. This relative ease of access to sources of proof is still a relevant part of the transfer analysis despite technological advances that have made transporting large volumes of documents across the country more convenient. *Volkswagen II*, 545 F.3d at 316. "That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case." *TikTok*, 85 F.4th at 358. "But when 'the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum[,]' this factor bears less strongly on the transfer analysis." *Id.* (quoting *Planned Parenthood*, 52 F.4th at 630).

Fort Worth has identified relevant evidence in the form of records relating to Fort Worth Police Department policies and training that are located in the Northern District of Texas

(Dkt. #14, Exhibit 2 at p. 2), which would seem to favor of transfer. *See Lozada-Leoni v. MoneyGram Int'l, Inc.*, No. 5:19CV11-RWS-CMC, 2019 WL 7875058, at *16 (E.D. Tex. Nov. 25, 2019) (quoting *Radmax*, 720 F.3d at 288) ("The Fifth Circuit found the relative ease of access to sources of proof weighed in favor of transfer 'because all of the documents and physical evidence [were] located in the [transferee district].'"), *report and recommendation adopted*, No. 5:19-CV-00011-RWS-CMC, 2020 WL 428080 (E.D. Tex. Jan. 28, 2020). However, Holloway asserts the documents would be produced electronically, therefore "virtually no undertaking at all" is required (Dkt. #16 at pp. 4–5). Fort Worth does not rebut the assertion that the documents would be produced electronically, or that electronic documents would not be "equally accessible in either forum." *See TikTok*, 85 F.4th at 358 (quoting *Planned Parenthood*, 52 F.4th at 630). So, under current precedent of *Planned Parenthood* and *TikTok*, the Court finds that this factor weighs just slightly in favor of transfer because the documents themselves are located in the Northern District of Texas but are equally accessible in either forum.

### B. The Availability of Compulsory Process

The second private interest factor considers the availability of compulsory process to secure the attendance of witnesses. *Id.* at 360 (citing *Volkswagen II*, 545 F.3d at 315). This factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Id.* (quoting *Planned Parenthood*, 52 F.4th at 630–31).

A court's subpoena power is governed by the Federal Rules of Civil Procedure 45. FED. R. CIV. P. 45. "For purposes of § 1404(a), there are three important parts to Rule 45." *Garrett v. Hanson*, 429 F. Supp. 3d 311, 318 (E.D. Tex. 2019) (citing *VirtualAgility, Inc. v. Salesforce.com*, Inc., No. 2:13-cv-00011, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014)). The Court "has subpoena

10

power over witnesses that live or work within 100 miles of the courthouse." *Id.* (citing FED. R. CIV. P. 45(c)(1)(A)). "Second, [this Court] has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in 'substantial expense.'" *Id.* (quoting FED. R. CIV. P. 45(c)(1)(B)(i)-(ii)). "Third, [this Court has the] power to compel a non-party witness's attendance at a deposition within 100 miles of where the witness lives or works." *Id.* (citing FED. R. CIV. P. 45(a)(2), (c)(1)).

Here, no party alleges or shows that any witness would be unwilling to testify. *See TikTok*, 85 F.4th at 360. In the absence of such a showing, the Court finds that this factor is neutral.

### C. Cost of Attendance for Willing Witnesses

"The third private factor, which considers the conveniences for witnesses who attend willingly, has been described as the most important factor." *Seagen Inc. v. Daiichi Sankyo Co., Ltd.*, 546 F. Supp. 3d 515, 531 (E.D. Tex. 2021) (citations omitted). In considering the availability and convenience of witnesses, a court must concentrate primarily upon the availability and convenience of key witnesses. *Shoemake v. Union Pacific R.R. Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002). The Fifth Circuit uses a "100-mile thresh-old" to assess this factor. *TikTok*, 85 F.4th at 361 (citing *Volkswagen II*, 545 F.3d at 315). "When the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *Id.* While the Court can consider imposed costs on witnesses when the proposed transfer is within the 100 mile threshold, "this factor has greater significance when the distance is greater than 100 miles." *Radmax*, 720 F.3d at 289.

11

The Fort Worth and Sherman courthouses sit less than 100 miles apart from each other, so this factor, while relevant, receives less significance. *See id.* Fort Worth has identified Miller, various police officers, and other persons as potential witnesses.[2] Fort Worth notes that all 30 police officers who may serve as witnesses work and reside within the Northern District of Texas (Dkt. #17, Exhibit 1 at p. 3). Further, 17 of the 30 police officers live more than 100 miles from the Sherman courthouse (Dkt. #17, Exhibit 1 at p. 3).

The Court finds this factor to slightly favor transfer. Normally, the convenience of party witnesses receives lesser weight than the convenience of non-party witnesses. *Scrum Alliance, Inc. v. Scrum, Inc.*, 4:20-CV-227, 2021 WL 1845154, at *6–7 (E.D. Tex. May 7, 2021). However, Fort Worth has only identified party witnesses for the purposes of analyzing this factor (Dkt. #14 at pp. 4–5; Dkt. #17, Exhibit 1 at pp. 1–3).[3] However, the 30 police officers living in the Northern District of Texas would experience a lesser inconvenience traveling to the Fort Worth courthouse than to the Sherman courthouse (Dkt. #17, Exhibit 1 at pp. 1–3). Even Miller would experience a lesser inconvenience traveling to the Fort Worth courthouse than to the Sherman courthouse because the Fort Worth courthouse is closer to his residence (Dkt. #17, Exhibit 2 ¶ 3). Accordingly, the Court finds this factor to slightly favor transfer.

---

[2] "At an absolute minimum, [the moving party] must identify key witnesses and provide a brief summary of their likely testimony . . . ." *McGinnis v. Eli Lilly & Co.*, 181 F. Supp. 2d 684, 688 (S.D. Tex. 2002). Fort Worth has met this burden with the 30 police officers that it identified. *See* Dkt. #17, Exhibit 1 at pp. 1–3). Officer Seaborne's statements on the topics to which the police officers could testify are sufficient to meet this burden (*See* Dkt. #17, Exhibit 1 at pp. 1–2). However, Fort Worth has not met this burden with Miller because it did not provide any information on his likely testimony. Regardless of whether the Court considers Miller as a relevant witness for purposes of its analysis of the convenience of witnesses, the result for this factor would not change.

[3] Although Fort Worth has identified nonparty witnesses in its supporting affidavits, it did not provide any information relating to where these potential witnesses reside and their relative convenience in traveling to the Fort Worth and Sherman courthouses (Dkt. #17, Exhibit 1 at p. 2). Therefore, the Court will not consider these nonparty witnesses in its analysis.

    **D.**    **Other Practical Problems**

The Court "considers all other practical problems that make trial of a case easy, expeditious, and inexpensive." *TikTok*, 85 F.4th at 362 (quoting *Volkswagen II*, 545 F.3d at 315). Aside from issues relating to other factors, the parties do not raise any issues relating to this factor (Dkt. #14 at p. 5 n.1; Dkt. #16 at p. 8; Dkt. #17 at p. 5). The Court finds that this factor is neutral.

**III.**    **Summary**

The Court finds that three factors weigh in favor of transfer, one weighs against transfer, while four factors are neutral. Although only three factors weigh in favor of transfer, the Court finds that the Northern District of Texas is the clearly more convenient forum, in particular because the local interests weigh in favor of that District. The Court also recognizes it should grant a motion to transfer where "virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *Radmax*, 720 F.3d at 290. Other than that Miller lives in Denton County, nothing connects this case to the Eastern District of Texas. The Court will thus exercise its discretion and transfer this case to the Fort Worth Division of the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

## CONCLUSION

It is therefore **ORDERED** that the Defendant City of Fort Worth's Motion to Transfer Venue (Dkt. #14) is hereby **GRANTED**.

It is further **ORDERED** that this case is **TRANSFERRED** to the Fort Worth Division of the United States District Court for the Northern District of Texas.

**IT IS SO ORDERED.**

SIGNED this 9th day of January, 2024.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE